IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CHRISTOPHER LIAKOPOULOS, )
)
    Plaintiff, )
)
v. ) NO.
)
EMMET WELCH, CITY OF CHICAGO, )
a municipal corporation, KIM FOXX, in her )
individual capacity, ALYSSA JANICKI, in )
her individual capacity, LYNN McCARTHY )
in her individual capacity, and THE )
COUNTY OF COOK, a municipal )
corporation, )
)
    Defendants, )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, CHRISTOPHER LIAKOPOULOS, by and through his attorneys, THE LAW OFFICES OF TIM BIASIELLO and DiFRANCO AND ASSOCIATES, P.C., complaining against the Defendants, EMMET WELCH, the CITY OF CHICAGO, KIM FOXX, ALYSSA JANICKI, LYNN McCARTHY, and the COUNTY OF COOK, and in furtherance thereof, he states as follows:

### JURISDICTION AND VENUE

1. Christopher Liakopoulos brings this action pursuant to 42 U.S.C. § 1983 as well as Illinois law to redress Defendants' tortious conduct and the deprivation of his rights under color of law of his rights as guaranteed by the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because all the events giving rise to this complaint occurred within this judicial district.

## PARTIES

4. At all times relevant to the events described in this complaint, the Defendant, Emmet Welch was employed as a police Sergeant by the City of Chicago. Defendant Welch engaged in the conduct complained of herein under the color of law and in the course and scope of his employment and is sued in his individual capacity.

5. Defendant City of Chicago is a municipal corporation that, is or was, the employer of Defendant Emmet Welch. Defendant Welch acted within the scope of his employment and as an agent or employee of the City of Chicago. The City of Chicago is liable for all state law torts committed by Defendant Welch pursuant to the doctrine of *respondeat superior*.

6. At all times relevant to the events described in this complaint, the Defendant, Kim Foxx was employed as the States Attorney for the County of Cook. Defendant Foxx engaged in the conduct complained of herein under the color of law and in the course and scope of her employment and is sued in her individual capacity.

7. At all times relevant to the events described in this complaint, the Defendant, Alyssa Janicki was employed as an Assistant States Attorney for the County of Cook. Defendant Janicki engaged in the conduct complained of herein under the color of law and in the course and scope of her employment and is sued in her individual capacity.

8. At all times relevant to the events described in this complaint, the Defendant, Lynn McCarthy was employed as the States Attorney for the County of Cook. Defendant McCarthy engaged in the conduct complained of herein under the color of law and in the course and scope of hers employment and is sued in her individual capacity.

9. Defendant Cook County is a governmental entity within the State of Illinois, which includes the Cook County States Attorney's Office. Cook County was the employer of Defendants Foxx, Janicki, and McCarthy, and is therefore a necessary party to this lawsuit. Defendant Cook County is liable for all torts under Illinois state law committed by Defendants Foxx, Janicki and McCarthy pursuant to the doctrine of *respondeat superior*.

## FACTS AND BACKGROUND

10. On July 22, 2022, the Plaintiff was driving an unmarked police vehicle along 18th Street at or near 1000 West in the City of Chicago.

11. At the time, another Chicago Police Officer, Ruben Reynoso, was a passenger in the said vehicle.

12. The Plaintiff and Ruben Reynoso were on their way to the Chicago Police Training Academy, where they were scheduled to conduct training for fellow Chicago Police officers.

13. As they were driving along 18th Street, Officer Reynoso and the Plaintiff observed several individuals engaging in suspicious activity on the sidewalk in front of a then closed shoe repair.

14. The Plaintiff stopped his vehicle, Officer Reynoso displayed his police badge, and spoke to those individuals.

15. As Officer Reynoso was speaking with those individuals, Miguel Medina and A.A., a juvenile, were walking in a westerly direction along the sidewalk approaching the stopped police vehicle from behind.

16. A.A. and Miguel Medina then left the sidewalk and walked onto the street, continuing to approach the stopped police vehicle from the rear.

17. A.A. and Medina approached the vehicle in an aggressive manner.

18. At the time, A.A. was wearing a facial mask, and he was armed with a weapon which he was holding openly in his right hand, pointed in the direction of the police vehicle.

19. As A.A. and Medina approached the vehicle, they were walking side by side, and each made threatening remarks as they directed the officers' attention to the weapon.

20. As A.A. and Medina continued to approach the police vehicle, Liakopoulos saw the weapon the A.A. was holding and pointing in the direction of that vehicle.

21. Upon seeing the weapon pointed in his direction, Liakopoulos feared for his life and his safety.

22. Liakopoulos then withdrew his weapon from its holster, turned and pointed it in the direction of A.A. and Medina, who were then standing in very close proximity to one another.

23. Within split seconds of observing A.A.'s exposed gun pointed in the direction of the police vehicle, Reynoso and Liakopoulos discharged their weapons.

24. At the time that they discharged their weapons, Liakopoulos and Reynoso were in fear for their lives.

25. As Miguel Medina was present on the street, he sustained non-fatal gunshot injury to his leg and his back.

26. There was no scientific evidence generated which linked the gun shot injury to any specific weapon.

27. A.A. discharged his weapon shooting multiple times in the direction of the police officers and Medina.

28. A.A. ran from the scene after exchanging gun fire with Liakopoulos and Reynoso.

29. On July 26, 2022, A.A. was apprehended, and charged with the attempted murder of Sgt Liakopoulos and Officer Reynoso.

30. On July 27, 2022, the office of the Cook County States Attorney dismissed the charges against A.A..

31. Shortly thereafter the incident, July 23, 2022, the Cook County States Attorney's Office's Law Enforcment Accountability Division (LEAD) became directly involved in the investigation of the incident.

32. LEAD is a division of the Cook County State's Attorneys Office which actively participates, and advises law enforcement officials in the investigations of officer involved shootings.

33. Shortly after the incident of July 22, 2022, an Assistant States Attorney assigned to the LEAD Division participated in conducting multiple interviews, including those of Liakopoulos and Reynoso, and several identified eye witnesses.

34. At all times alleged in the Complaint, Defendant, Lynn McCarthy was the Supervisor of the of the Cook County States Attorney's Office's Law Enforcment Accountability Division (LEAD) and actively involved in the investigation of the events of July 22, 2022.

35. As Supervisor of the Cook County State's Attorney's Office of Law Enforcement Accountability Division, Lynn McCarthy was mandated to report the progress and results of investigations regarding police involved shootings directly to States Attorney Kim Foxx through her First Assistant, and to procure approval from the States Attorney prior to bringing charges against a police officer involved in a shooting incident.

36. Lynn McCarthy participated in interviewing various witnesses to the events of July 22, 2022, and advised police officers conducting the investigation.

37. At all times alleged in this Complaint, Alyssa Janicki was assigned to the States Attorneys Office Law Enforcement Accountability Division and was actively involved in the investigation of the events of July 22, 2022.

38. Alyssa Janicki participated in interviewing various witnesses to the events of July 22, 2022, and advised police officers conducting the investigation.

39. Sergeant Emmet Welch participated in the investigation of the events of July 22, 2022 in conjunction with the States Attorney's LEAD Division, including interviewing multiple witnesses, gathering information, and reporting to his superiors and to others in the Chicago Police Department regarding the shooting incident of July 22, 2022.

40. Welch and the LEAD investigators learned from several separate witnesses that A.A. approached Liakopoulos' unmarked police vehicle displaying a weapon in his hand.

41. On the same day that Liakopoulos was charged with aggravated battery, aggravated discharge, and official misconduct in a criminal complaint, September 15, 2022, and after having conducted multiple interviews, reviewing reports and consulting with LEAD, Defendant Sergeant Welch reported to other Chicago Police officials that Liakopoulos and Reynoso were in fear for their lives at the time they discharged their weapons.

42. Welch reported that their fear was based upon their having observed the facially masked A.A. approaching them, with Miguel Medina at his side, while was holding a weapon in his right hand that was pointed directly at them.

43. On October 22, 2022, Defendant Officer Welch was called to testify as a witness before a Cook County Grand Jury, at which time he was questioned by Assistant State's Attorney Alyssa Janicki, regarding the events of the shooting of July 22, 2022.

44. Assistant States Attorney Lynn McCarthy also appeared before that Grand Jury on October 22, 2022.

45. Janicki, McCarthy and Welch conspired in the preparation and presentation of testimony that was misleading and inaccurate in order to secure a True Bill for the Grand Jury.

46. On July 23, 2022, the Cook County State's Attorney Office had approved a search warrant, which was later signed, to be executed on the cell phone of Miguel Medina.

47. The phone obtained from the aforementioned search warrant contained video evidence that was not disclosed to the Grand Jury.

48. Multiple videos were withheld despite Grand Jury requests for the knowledge of other videos.

49. Testimony was offered to the Grand Jury that was substantiated based on opinion and not scientific fact.

50. On October 27, 2022, the Grand Jury returned its Bill of Indictment against Liakopoulos charging him with aggravated battery for discharging a firearm causing great bodily harm, aggravated discharge of a firearm, official misconduct based upon an aggravated battery, and official misconduct based on aggravated discharge.

51. States Attorney, Kim Foxx, approved the filing of the charges against Liakopoulos, and Kim Foxx approved the presentation of the case before the Grand Jury.

52. Christopher Liakopoulos was subsequently compelled to appear and to answer charges in the Circuit Court of Cook County in the criminal proceedings entitled "People of the State of Illinois v. Christopher Liakopoulos, 2022 CR 12304".

53. Subsequent to his arrest, Christopher Liakopoulos was relieved of his duties as Sergeant of the Chicago Police Department.

54. A trial of the criminal charge was subsequently conducted before the Honorable Judge Lawrence Flood in the Circuit Court of Cook County in September of 2023, and on September 28, 2023, the Plaintiff was found not guilty of all charges.

## COUNT I.

### 42 U.S.C. § 1983
### DEPRIVATION OF LIBERTY
### WITHOUT PROBABLE CAUSE
### Liakopoulos v. Janicki and McCarthy

55. Plaintiff incorporates each paragraph of this Complaint as Paragraph 55 of Count I.

56. As more fully described above, the Defendant Alyssa Janicki was directly involved in the law enforcement investigation which preceded criminal charges being placed against the Plaintiff.

57. As more fully described above, the Defendant Lynn McCarthy was directly involved in the law enforcement investigation which preceded criminal charges being placed against the Plaintiff.

58. As a result of the Defendants having acted as investigators in gathering the facts associated with the events connected to the shooting of Miguel Medina on July 22, 2022, Defendants Janicki and McCarthy knew that the facts and information gathered by that investigation, as more fully described in the paragraphs above, established that there was no probable cause for the arrest of Plaintiff because they knew that the Plaintiff was legally justified in discharging his weapon in the direction of A.A. and Miguel Medina.

59. Notwithstanding that knowledge, the Defendants, acted outside their authority, and caused the Plaintiff to be charged with criminal offenses that he did not commit, including aggravated battery, aggravated discharge of a firearm and 2 counts of official misconduct on or about September 15, 2022.

60. After having caused criminal charges to be initiated against the Plaintiff, the Defendants, individually, jointly and in conspiracy with one another, as well as under color of law, and within the scope of their employment, wilfully presented deceptive and misleading evidence to the Grand Jury, as more fully described in the paragraphs above, with the intent to cause a Bill of Indictment to be returned against the Plaintiff, thus compelling the Plaintiff to stand trial and defend charges for which there was no probable cause.

61. By such conduct, the Defendants caused the Plaintiff to be deprived of his liberty without probable cause, in violation of the rights afforded him by the Fourth and Fourteenth Amendments.

62. The judicial proceedings were terminated in his favor by a finding of not guilty.

63. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and in total disregard of the truth and the Plaintiff's clear innocence.

64. As a result of the misconduct of the Defendant described in this Count, Plaintiff suffered loss of liberty, mental anguish, humiliation, emotional pain and distress, economic loss and continuing injuries and damages.

COUNT II.
42 U.S.C. § 1983
DEPRIVATION OF LIBERTY
WITHOUT PROBABLE CAUSE
Liakopoulos v. Foxx

65. Plaintiff incorporates each paragraph of this Complaint as paragraph 65 of Count II.

66. States Attorney Kim Foxx, acting under color of law, and within the scope of her employment, was directly privy to, and directly informed, as to the information and facts gathered generated by the LEAD Division of the States Attorney's Office, during the course of

the investigation conducted jointly by the LEAD Division and officers of the Chicago Police Department regarding the events associated with the officer involved shooting of July 22, 2022.

67. Kim Foxx approved the filing of criminal charges against the Plaintiff on September 15, 2022.

68. Defendant Foxx was deliberately indifferent to the rights of the Plaintiff by failing to act to avoid criminal proceedings being instituted against the Plaintiff, and continuing to be conducted against the Plaintiff, when she knew that information gathered during the investigation established that the Plaintiff was legally justified in discharging his weapon in the direction of A.A. and Miguel Medina on July 22, 2022.

69. The misconduct described in this Court was objectively unreasonable and was undertaken intentionally, with malice, willfulness and deliberate indifference to the rights afforded Plaintiff by the Fourth and Fourteenth Amendments.

70. The Defendant acted outside her authority and caused the Plaintiff to be charged with crimes he did not commit.

71. As a result of the misconduct of the Defendant as described in this Count, Plaintiff suffered loss of liberty, mental anguish, humiliation, emotional pain and distress, economic loss and continuing injuries and damages.

COUNT III.
42 U.S.C. § 1983
DEPRIVATION OF LIBERTY
WITHOUT PROBABLE CAUSE
Liakopoulos v. Welch

72. Plaintiff incorporates each paragraph of this Complaint as paragraph 72 of Count III.

73. As more fully described above, the Defendant Emmet Welch participated in the investigation that ensued following the shooting of Miguel Medina on July 22, 2022.

74. As a result of his participation in that investigation, Welch became aware that the Plaintiff had legal justification to discharge his weapon in the direction of Miguel Medina on 18th Street on July 22, 2022 at approximately 7:00 A.M.

75. As more fully described in the paragraphs above, Welch was aware that, at the moment that the Plaintiff discharged his weapon, he was legally justified because he was in reasonable fear for his life.

76. As more fully described above, on October 22, 2022, Welch appeared before a Cook County Grand Jury and gave testimony that was deceptive and misleading, designed to cause a Felony Bill of Indictment to be issued against the Plaintiff.

77. At the time that the Defendant appeared, he had a duty to testify fairly, and not provide testimony that was deliberately misleading, or to provide testimony that was designed to deceive the Grand Jury.

78. Notwithstanding those duties, and as more fully described above, Welch failed to advise the Grand Jury of material, inherently intrinsic exculpatory facts that the Defendant knew were true which indicated that the Plaintiff had reasonable justification to discharge his firearm in the direction of Miguel Medina on July 22, 2022.

79. As a result of the presentation of the Defendant's deceptive and misleading testimony, a Bill of Indictment was issued charging the Plaintiff with multiple felonies, causing the Plaintiff to be detained, prosecuted and forced to defend criminal charges, all in the absence of probable cause.

80. There was a reasonable probability that had the Defendant testified in a forthright, non-deceptive manner and provided the Grand Jurors with the material facts, known to the witness to be true, including the fact that split seconds before the Plaintiff discharged his weapon

in the direction of A.A. and Miguel Medina, the Plaintiff had observed A.A. approach his police vehicle from the rear, wearing a mask, displaying a weapon in his right hand held above his waist, and pointed at the police vehicle, the Grand Jury would not have returned a True Bill of Indictment.

81. The misconduct described in this Court was objectively unreasonable and was undertaken intentionally, with malice, willfulness and deliberate indifference to the Plaintiff.

82. The misconduct described in this Count was undertaken by the Defendant Welch under color of law, and within the scope of his employment.

83. The misconduct described in this Court was objectively unreasonable and was undertaken intentionally with malice, and/or reckless indifference to the rights of others.

84. The actions of the Defendant Welch as described above deprived the Plaintiff of the rights afforded him by the Fourth and Fourteenth Amendments by causing the Plaintiff to be charged with criminal offenses by presenting misleading testimony to the Cook County Grand Jury.

85. As a direct and proximate result of the Defendant's actions, Christopher Liakopoulos suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress and anguish.

COUNT IV
42 U.S.C. § 1983-Failure to Intervene
Liakopoulos v. Welch, Janicki, McCarthy, Foxx

86. Plaintiff incorporates each paragraph of this Complaint as paragraph 86 of Count IV.

87. In the manner more fully described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the

violation of Mr. Liakopoulos' constitutional rights, notwithstanding that each had a duty and an opportunity to do so.

88. Each of the Defendants had ample and reasonable opportunities to perform his or her duty to prevent this harm, but failed to do so.

89. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and in disregard of Mr. Liakopoulos's innocence.

90. As a result of the Defendants' misconduct as described in this Count, the Plaintiff suffered loss of liberty, mental anguish, humiliation, degradation, physical and emotional pain and suffering, financial loss, and continuing injuries as set forth above.

COUNT V
42 U.S.C. § 1983
Conspiracy to Violate Constitutional Rights
Liakopoulos v. Welch, Janicki, McCarthy, Foxx

91. Plaintiff incorporates each paragraph of this Complaint as paragraph 91 of Count V.

92. In the manner more fully described above, Defendants, acting in concert with one another and other co-conspirators, known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute and convict Mr. Liakopoulos for Aggravated Battery by Firearm, Aggravated Discharge of Firearm and two counts of Official Misconduct.

93. As a result of the Defendants' misconduct as described in this Count, the Plaintiff suffered loss of liberty, mental anguish, humiliation, degradation, physical and emotional pain and suffering, financial loss, and continuing injuries as set forth above.

## COUNT VI
### STATE LAW CLAIM-MALICIOUS PROSECUTION
#### Liakopoulos v. Welch

94. Plaintiff incorporates each paragraph of this Complaint as paragraph 94 of Count VI.

95. In the manner more fully described above, the Defendant accused the Plaintiff of criminal activity and exerted influence to cause charges to be initiated and judicial proceedings to be continued against the Plaintiff without any probable cause.

96. In so doing, the Defendant caused the Plaintiff to be compelled to participate in judicial proceedings for which there was no probable cause.

97. The criminal charges were brought against the Plaintiff maliciously, resulting in injury and damage to the Plaintiff.

98. The criminal prosecution was terminated in favor of the Plaintiff by a finding of not guilty.

99. These actions were taken by the Defendant under color of law, and taken within the scope of his employment.

100. As a direct and proximate result of the Defendant's actions, the Plaintiff suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress, humiliation and degradation, anguish, and other injury.

## COUNT VII
### STATE LAW CLAIM-MALICIOUS PROSECUTION
#### Liakopoulos v. Janicki, McCarthy and Foxx

101. Plaintiff incorporates each paragraph of this Complaint as paragraph 101 of Count VII.

102. In the manner more fully described above, the Defendants accused the Plaintiff of criminal activity and exerted influence, and caused charges to be initiated and judicial proceedings to then be continued against the Plaintiff without any probable cause.

103. In so doing, the Defendants caused the Plaintiff to be compelled to participate in judicial proceedings for which there was no probable cause.

104. The criminal charges were brought against the Plaintiff maliciously, resulting in injury and damage to the Plaintiff.

105. The criminal prosecution was terminated in favor of the Plaintiff by a finding of not guilty.

106. These actions were taken by the Defendants under color of law, and taken within the scope of his employment.

107. As a direct and proximate result of the Defendants' actions, the Plaintiff suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress, humiliation and degradation, anguish, and other injury.

COUNT VIII
Illinois Law– Intentional Infliction of Emotional Distress
Liakopoulos v. Welch

108. Plaintiff incorporates each paragraph of this Complaint as paragraph 108 of Count VIII.

109. The actions and conduct of the Defendant, as set forth above, were extreme and outrageous. These actions were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff as more fully alleged above.

110. The Defendant's actions were taken under color of law and within the scope of his employment.

111. As a result of Defendant's misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### COUNT IX
Illinois State Law Claim– Intentional Infliction of Emotional Distress
Liakopoulos v. McCarthy, Janicki and Foxx

112. Plaintiff incorporates each paragraph of this Complaint as paragraph 112 of Count IX.

113. The actions, omission, and conduct of the Defendants, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff as more fully alleged above.

114. The Defendants' actions were taken under color of law and within the scope of their employment.

115. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### COUNT X
State Law Claim
Respondeat Superior
Liakopoulos v. City of Chicago

116. Plaintiff incorporates each paragraph of this Complaint as paragraph 116 of Count X.

117. While committing the misconduct as alleged above, the Defendant Welch was an employee of the City of Chicago, and was, at all relevant times, acting within the scope of his employment.

118. The Defendant, City of Chicago is liable as a principal for the state law torts and misconduct committed by its agents, including the Defendant Welch.

119. As a direct and proximate result of the conduct of the Defendant City of Chicago's agent, Defendant Welch, the Plaintiff suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress, humiliation and degradation, anguish, and other injury.

## COUNT XI
### State Law Claim
### Indemnification
### Liakopoulos v. City of Chicago

120. Plaintiff incorporates each paragraph of this Complaint as paragraph 120 of Count XI.

121. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment

122. Defendant Welch was an employee, member, and agent of the City of Chicago, acting at all relevant times within the scope of his employment in committing the misconduct described herein.

123. As a direct and proximate result of the conduct of the Defendant City of Chicago's agent, Defendant Welch, the Plaintiff suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress, humiliation and degradation, anguish, and other injury.

COUNT XII
State Law Claim
Indemnification
Liakopoulos v. County of Cook

124. Plaintiff incorporates each paragraph of this Complaint as paragraph 124 of Count XII.

125. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment

126. Defendants, Janicki, McCarthy and Foxx were employees, and agent of the County of Cook, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

127. As a direct and proximate result of the conduct of the Defendant County of Cook's agents, the Plaintiff suffered injuries, including, but not limited to, loss of liberty, financial loss, severe emotional distress, humiliation and degradation, anguish, and other injury

WHEREFORE, the Plaintiff, Christopher Liakopoulos, respectfully prays that this Court enter a judgment in his favor and against the Defendants, Emmet Welch, the City of Chicago, Kim Foxx, Alyssa Janicki, Lynn McCarthy and the County of Cook awarding compensatory damages, attorneys' fees, costs, pre and post judgment interest against each Defendant, and for their wilful and or malicious conduct, punitive damages against each of the individual defendants, and for such other relief as may be right and just.

Respectfully submitted,

*/s/ Basciello*

One of the Plaintiff's Attorneys

THE PLAINTIFF DEMANDS TRIAL BY JURY pursuant to Federal Rule of CivilProcedure 38(b) on all triable issues.

LAW OFFICES OF TIM BIASIELLO
617 West Devon Avenue
Park Ridge, IL 60068
847-951-1381
timbslo@yahoo.com
#204501

DiFRANCO & ASSOCIATES, P.C.
617 West Devon Avenue
Park Ridge, IL 60068
847-825-7744
#6195782